**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SOSSAMMA GEORGE SEBASTIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 25-cv-14471** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **SEBASTIN FRANCIS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Sossamma George Sebastin ("plaintiff or "Sossamma") has filed a 157-page first amended complaint (accompanied by over 150 pages of exhibits) alleging violations of her constitutional rights during her years-long divorce and child custody proceedings in state court. She brings her claims against Sebastin Francis, her ex-husband and the father of her two minor children, along with a number of individuals involved in the divorce and custody proceedings, namely Judge Rhonda Bruno, who presided over the case; Caryn Barone, the Guardian ad Litem ("GAL"); Dr. David Finn, the custody evaluator; James Jones, a DCFS investigator; and Dr. Chinni Chilamkurti, a physician appointed by the state court to provide plaintiff with mental health treatment before re-visiting her parenting rights (although it does not appear that plaintiff ever completed such treatment).

Now before the Court are multiple fully briefed motions to dismiss in which defendants argue, among many other things, that the Court lacks subject matter jurisdiction over plaintiff's claims.[1] For the following reasons, the Court agrees with respect to plaintiff's first amended

[1] The fully briefed motions to dismiss before the Court are defendant Bruno's motion to dismiss, (Dckt. #26), defendant Barone's motion to dismiss, (Dckt. #30), defendant Chilamkurti's motion to dismiss, (Dckt. #35), and defendant Finn's motion to dismiss, (Dckt. #59). Defendant Francis filed a pro se

complaint, grants defendants' motions to dismiss, and dismisses plaintiff's first amended complaint without prejudice and with leave to amend solely to the extent that she can do so in accordance with this Opinion.

## I. FACTUAL BACKGROUND

Sossamma and defendant Sebastin Francis ("Francis") were married in 2007 and share two children: R.S. (born in 2008), and A.S. (born in 2017). On July 1, 2020, Francis filed a petition for dissolution of marriage in the Circuit Court of Lake County, stating, at least at that time, that both parents were fit to share parental responsibility and decision-making. (Dckt. #11 ¶1). According to plaintiff, however, over the next four years of state court litigation, defendants engaged in a "coordinated conspiracy" to sever plaintiff's relationship with her children. (*Id*. at 1). The defendants' purportedly

> unconstitutional conduct culminated in the seizure of plaintiff's children based on a secret report, the imposition of a two-year no-contact order without a finding of abuse or unfitness, and the effective termination of her parental rights through a process based on fraud, bias, perjury, ex parte communications, falsification of records, and the systematic exclusion of exculpatory, inculpatory, impeachment and rebuttal evidence.

(*Id*. at 1–2).

The Court will not recount the entirety of plaintiff's allegations.[2] In short, plaintiff takes issue with the manner in which the state court proceedings were conducted, defendants' conduct throughout those proceedings, and various rulings by the state court. Those rulings include Judge Bruno's pre-trial November 2023 order (in reliance on a sealed report by defendant Finn),

answer to the complaint and, although the docket reflects that defendant Jones was served, he has not yet appeared. Nonetheless, in light of the Court's finding that it lacks jurisdiction over plaintiff's claims, this finding applies equally to even those defendants who have not moved to dismiss.

[2] For a detailed recitation of the state court proceedings, *see In re Marriage of S.F. & S.G.S.*, 2024 IL App (2d) 240440-U, ¶ 5, *cert. denied sub nom. S. G. S. v. S. F.*, 146 S. Ct. 105 (2025).

in which he removed the children from plaintiff's custody; awarded parenting time to Francis, ordered plaintiff have no contact with her children, school staff, or medical professionals; and ordered plaintiff to undergo 26 therapy sessions with defendant Chilamkurti before her parental rights would be re-visited. Ultimately, the state court case proceeded to a seven-day trial in May and June of 2024. On July 16, 2024, Judge Bruno entered a final judgment for dissolution and parental allocation, in which he awarded all parenting time to Francis pending plaintiff's compliance with the November 2023 order to attend therapy sessions with defendant Chilamkurti. Plaintiff's appeal of Judge Bruno's final judgment order was not successful and her writ for certiorari was denied. *Supra* at n.2.

In her 18-count first amended complaint in this case, plaintiff asserts claims arising out of the state court proceedings for violation of her procedural and substantive due process rights (Counts 1 and 2); violation of her First Amendment right to parent-child speech, intimate association, and free exercise (Counts 3 and 4); sex discrimination (Count 5); denial of access to courts/retaliation (Count 6); disability discrimination (Count 7); unlawful disclosure of protected health information (Count 8); "compelled medical treatment" (Count 9); unreasonable seizure of children (Count 10); conspiracy (Count 11); stigma-plus (Count 12); misuse of the Illinois Domestic Violence Act (Count 13); abuse of process (Count 14); defamation (Count 15); intentional infliction of emotional distress (Count 16); "unconstitutional delegation and secret evidence in therapeutic process" (Count 17); and "retaliatory and discriminatory use of state enforcement regime" (Count 18).

Although plaintiff maintains in her complaint (and in responses and sur-replies to the motions to dismiss) that she is not seeking "federal appellate review of a state court judgment," (Dckt. #11 at 2), her prayer for relief tells a different story. In it, she asks the Court to, among

other things, declare that the state court proceedings violated her Constitutional rights; vacate and order non-enforcement of the "Tainted Orders," including the removal order and the no contact order, the order compelling therapy, and the final custody judgment; enjoin defendants from presiding over or being involved in any further proceedings involving plaintiff's parental rights; direct the state court to "take all affirmative steps necessary to facilitate the immediate physical return of the children to Plaintiff's custody . . . pending new custody proceedings conducted with constitutionally adequate process"; and to mandate—for the state court—a "constitutionally sound framework for the future." (Dckt. #11 at 152–55).

Defendants ask the Court to dismiss plaintiff's first amended complaint for lack of subject matter jurisdiction under Rule 12(b)(1), among many other reasons.

## II. LEGAL STANDARD

Where, as here, a defendant's "motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge first." *Rizzi v. Calumet City*, 11 F.Supp.2d 994, 995 (N.D. Ill. 1998). "Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case," and the Court accepts "as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff" when determining whether there is subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (cleaned up). Nevertheless, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met," *Ctr. for Dermatology*, 770 F.3d at 588–89, and the court may consider the complaint and matters outside the pleadings—including "pleadings and orders in the state court which [a]re attached as exhibits to [the] motion to dismiss"—to determine if jurisdiction is proper. *Pintozzi*

*v. Scott*, 436 F.2d 375, 378 n.3 (7th Cir. 1970); *Hanover Grp., Inc. v. Mfr. Home Communities Inc.*, No. IP00-0739-C-T/G, 2000 WL 1124877, at *2–3 (S.D.Ind. July 12, 2000) (considering documents from the related state court litigation when determining whether subject-matter jurisdiction is barred by the *Rooker-Feldman* doctrine); *Murphy v. Allen County DCS/CASA*, No. 1:23-cv-00009-HAB-SLC, 2024 WL 992245, at *6 n.7 (N.D.Ind. Feb. 14, 2024) (same).

## III. ANALYSIS

Defendants argue that the Court lacks subject matter jurisdiction over plaintiff's first amended complaint under the *Rooker-Feldman* doctrine, the domestic relations exception to federal jurisdiction, and general abstention principles. The Court agrees.

First, the *Rooker-Feldman* doctrine is an important foundation for the division of power between federal and state courts . . . [and] imposes a 'jurisdictional bar' that prohibits federal courts other than the Supreme Court of the United States from reviewing final state court judgments." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023) (cleaned up). "The doctrine reflects the fact that lower federal courts are not vested with appellate authority over state courts." *Id*. (cleaned up). As such, "no matter how wrong a state court judgment may be under federal law," under *Rooker-Feldman*, "only the Supreme Court of the United States has jurisdiction to review it." *Sykes v. Cook Cnty. Circuit Court Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016). *Rooker-Feldman* applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (en banc) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). However, *Rooker-Feldman*

does not apply to bar jurisdiction over a plaintiff's federal claim if she did not have a reasonable opportunity to raise her federal issues in the state courts. *Gilbank*, 111 F.4th 766

Here, no matter how plaintiff couches her various claims, after losing in state court, she complains of injuries caused by the state court judgment (and the proceedings leading up to that judgment), she expressly asks the court to review and reject that judgment, and there is no indication that she did not have the opportunity to raise her issues in the state court appeals process. Indeed, there can be no dispute that plaintiff asks this Court in her prayer for relief to declare the state court's final judgment unconstitutional, vacate that judgment (among other orders), and bar the state court from enforcing the judgment.[3] Cases seeking this type of relief are precluded under *Rooker-Feldman* even where, as here, plaintiff "alleges that the state courts that injured her were corrupt." *Gilbank*, 111 F.4th at 781.

On this point, the Court finds the Seventh Circuit's reasoning in *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 396 (7th Cir. 2023), instructive. There, after the state court issued an order requiring that Hadzi-Tanovic's parenting time be supervised, she filed a federal complaint under 42 U.S.C. §1983 against her ex-husband, the children's guardian ad litem, and the state court judge, alleging the three conspired to violate her and the children's rights to family

---

[3] Plaintiff's assertion that defendants have misinterpreted her request for relief, stating that the "[t]he word 'vacatur' appears only in a subheading" of her amended complaint, is unavailing. (Dckt. #43 at 5). Notwithstanding this assertion in her briefing, the prayer for relief in her complaint demands the Court declare the state court's orders void and mandate how any further proceedings in state court will proceed. In any event, "[t]o the extent there is any difference between vacating [a state court] order and enjoining it, federal courts would still lack jurisdiction to grant such a request out of federalism concerns." *Taylor v. Cowger*, No. 25-2508, 2026 WL 457242, at *1 (7th Cir. Feb. 18, 2026). At times, plaintiff also attempts to limit her prayer for relief only to defendant Bruno in this respect, but it does not change the nature of the relief she seeks.

association and her right to a fair and unbiased trier of fact. The Seventh Circuit affirmed the dismissal of plaintiff's claims, reasoning as follows:

> [T]rying Hadzi-Tanovic's allegations of corruption would require a federal court to review the state court's decisions. Her complaint invites the district court to ferret out the judge's supposed bias by examining the state court proceedings. She insists that the "post-trial transcripts in this case provide overwhelming proof that Associate Judge Johnson used the auspices of his office as judge to aid and abet the civil conspiracy plan" of [the guardian ad litem] and [her ex-husband]. And she alleges that Judge Johnson's rulings, including his evidentiary and scheduling decisions, reveal "outrageous, unconstitutional, intentional bias."
>
> We express no views on the merits of those allegations. The problem here is that the only way a federal court could determine the merits of those allegations would be to review the state court's handling of the case from top to bottom, substantively and procedurally. If the state court's decisions appeared to be well-grounded in law and fact and reached through fair procedures, a federal court would presumably conclude they were not rooted in bias or corruption. If the federal court found factual, legal, or procedural errors, the court would have to consider whether the errors were ordinary errors of a fallible human institution or instead the product of corruption. Yet *Rooker-Feldman* is supposed to prohibit lower federal courts from engaging in what amounts to appellate review of state court decisions in this manner.

*Id*. at 404–05; *see also id*. at 401 ("For a federal court to find that the state court deprived plaintiffs of their constitutional right to familial association, the federal court would have to find that the state court erred in applying state family law."). This reasoning applies equally here, where granting plaintiff the relief she pleads would require the Court to improperly review the state court proceedings.

The Court acknowledges that in her briefs, plaintiff repeatedly attempts to backtrack from her prayer for relief by arguing that her inclusion of a request for damages against certain defendants for their prejudgment conduct cures any jurisdictional bar. (*See, e.g.*, Dckt. #71). Not so, as currently pled. In *Gilbank*, a majority of the court did confirm that a "damages suit" that "does not seek to undo any state court judgment" does not fall within *Rooker-Feldman*. 111 F.4th at 791; *see also GW v. Scannicchio*, No. 25 C 4551, 2026 WL 1140258, at *5 (N.D.Ill. Apr.

22, 2026) ("[T]o the extent that Plaintiffs seek damages for the violation of their rights that have generally occurred during the ongoing proceedings in the Custody Lawsuit and the Rape Lawsuit instead of attacking a specific final order in these cases, *Rooker-Feldman* does not bar the Court from considering Plaintiffs' claims."). But in *Gilbank*, the plaintiff could not possibly be seeking to undo the state court judgment (which awarded custody to the father) because she had *already* regained custody of her daughter. Here, in contrast, plaintiff expressly asks the Court in her first amended complaint to undo the state court judgment (notwithstanding inclusion of requests for damages), and she admittedly does not have custody of her children. (*See* Dckt. #11 at 2 ("The constitutional injuries alleged herein are presently operative—Plaintiff's children remain seized, her speech remains censored, her parental role remains nullified, and her access to her children remains blocked as of the filing of this Complaint and continuing each day thereafter.")).

Second, even if *Rooker-Feldman* did not apply, the domestic-relations exception to federal jurisdiction warrants dismissal. That exception recognizes that "domestic relations disputes have been traditionally left to the state courts, which have more experience in divorce, alimony, and child custody matters and are more closely associated with the state and local government organizations dedicated to handling such issues." *Dillon v. Alan H. Shifrin & Assocs., LLC*, No. 16-CV-05761, 2017 WL 2480706, at *3 (N.D.Ill. June 8, 2017) (cleaned up); *see also Rose v. Rose*, 481 U.S. 619, 625 (1987), *quoting In re Burrus*, 136 U.S. 586, 593–94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."); *De Sylva v. Ballentine*, 351 U.S. 570, 580 (1956) ("[T]here is no federal law of domestic relations, which is primarily a matter of state concern."). "As interpreted by the Seventh Circuit, a suit [such as this one] seeking 'one or more of the distinctive forms of relief associated with the domestic relations

jurisdiction: the granting of a divorce or an annulment, *an award of child custody*, a decree of alimony or child support' falls within the exception's 'core.'" *Dillon*, 2017 WL 2480706, at *3, *quoting Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998) (emphasis added). This exception applies here where plaintiff has asked the Court to direct the state court to facilitate the immediate physical return of her minor children and to mandate a constitutional framework for any further state court custody proceedings.

Third, even if plaintiff's allegations concerning purported constitutional violations (which account for the majority of her eighteen claims) were not a perfect fit for *Rooker-Feldman* or the domestic relations exception, "[u]nder established abstention doctrines . . . a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *J.B. v. Woodard*, 997 F.3d 714, 721–22 (7th Cir. 2021). By demanding that this Court (1) enjoin defendants from presiding over or being involved in any further proceedings; (2) direct the state court to "take all affirmative steps necessary to facilitate the immediate physical return of the children to Plaintiff's custody . . . pending new custody proceedings conducted with constitutionally adequate process;" and (3) mandate—for the state court—a "constitutionally sound framework for the future," (Dckt. #11 at 152–55), plaintiff "seeks a level of intrusion by the federal courts that is simply too high." *Woodard*, 997 F.3d at 722; *Scannicchio*, 2026 WL 1140258, at *6 (finding that "general principles of equity, comity, and federalism that are foundational to our federal constitutional structure" require the Court to abstain from exercising jurisdiction over" plaintiff's claims of constitutional violations) (cleaned up); *Lopez v. Kubalanza*, No. 24 C 13340, 2025 WL 2306815, at *13 (N.D.Ill. Aug. 11, 2025) ("Although a declaration that the state court is violating [plaintiff's] constitutional and ADA rights and a

damages reward to compensate those violations would not necessarily require the state court to alter their proceedings, it would put pressure on it to do so."). Simply put, as currently pled, this "federal[] court need[s] to stay on the sidelines" in a case like this one. *Woodard*, 997 F.3d at 723.

Fourth, even absent the jurisdictional barriers outlined above, plaintiff's claims against Judge Bruno, GAL Barone, custody evaluator David Finn, and appointed therapist Chilamkurti (even presuming plaintiff sought treatment from her), crash against an impenetrable barrier created by the doctrine of absolute immunity.

Specifically, "[j]udges are protected by *absolute* judicial immunity from acts they take in their judicial capacities." *Lewis v. Ludwig*, No. 24-CV-1013-PP, 2024 WL 3887660, at *3 (E.D.Wis. Aug. 21, 2024) (emphasis added) (citing *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)) and *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001)). The doctrine of judicial immunity recognizes that "[a]lthough unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles*, 502 U.S. at 10; *see also Agrawal v. Pallmeyer*, 313 Fed.Appx. 866, 867 (7th Cir. 2009) ("The doctrine protects judges from the fear of future litigation brought by disgruntled litigants unhappy with judicial decision-making."). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). Moreover, "[g]uardians ad litem and court-appointed experts, including psychiatrists, are *absolutely* immune from liability for damages when they act at the court's direction." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) (emphasis added).

Fifth, plaintiff's first amended complaint fails to comply with Rules 8(a) and 10(b). Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 10(b) requires a party to state its claims or defenses in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." Fed.R.Civ.P. 10(b). "The primary purpose of these rules "is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). "Though length alone is generally insufficient to justify rejecting a complaint, unintelligibility is certainly a legitimate reason for doing so." *Id*. at 797–98; *see also United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Length may make a complaint unintelligible[ ] by scattering and concealing in a morass of irrelevancies the few allegations that matter."); *Davis v. Anderson*, 718 Fed.Appx. 420, 424 (7th Cir. 2017) ("[J]udges and adverse parties need not try to fish a gold coin from a bucket of mud."). Here, plaintiff's first amended complaint—which spans 157 pages and 496 numbered paragraphs *plus* more than 150 pages of exhibits—falls far short of the requirements of Rules 8(a) and 10(b); this failure separately supports its dismissal. *See Luffman v. Collinsville Cmty. Unit Sch. Dist. #10*, No. 25-2049, 2026 WL 1815364, at *2 (7th Cir. June 24, 2026) (finding the district court properly dismissed plaintiff's complaint for running afoul of Rule 8 where it spanned 300 pages).

Finally, plaintiff's remaining claims for abuse of process, defamation, and intentional infliction of emotional distress arise under state law. However, because there are currently no federal claims pending and plaintiff has not (and cannot) establish diversity jurisdiction given the defendants she has sued, the Court declines to exercise supplemental jurisdiction over these state law claims. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-

established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

For these reasons, the Court dismisses the first amended complaint. However, in light of plaintiff's pro se status, and her repeated assertions (questionable as they may be) that she is not simply seeking an appeal of the state court judgment, the Court will grant her one more opportunity to attempt to amend her complaint to the extent she can do so consistent with the dictates of this Memorandum Opinion and Order and Federal Rule of Civil Procedure 11. As such, on or before September 25, 2026, plaintiff may file a motion for leave to file a second amended complaint and she must attach her proposed second amended complaint as an exhibit to that motion. Any proposed second amended complaint (1) must only include claims that are within this Court's jurisdiction, i.e., those that are not barred by *Rooker-Feldman*, the domestic relations exception, and/or general abstention principles; (2) must assert claims only against defendants who are not immune against such claims; and (3) must fully comply with Rules 8 and 10(b). If plaintiff's proposed second amended complaint fails to comply with these requirements, the Court will deny plaintiff leave to file it and close the case.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss plaintiff's first amended complaint, (Dckt. ##26, 30, 35 & 59), and this case is dismissed without prejudice and with leave to file a motion seeking leave to file a second amended complaint solely to the extent plaintiff can do so in accordance with the requirements set forth in this Memorandum Opinion and Order.

**Date: August 24, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**